**Samuel R. BLAINE**

v.

**The UNITED STATES.**

**No. 437–83C.**

United States Claims Court.

July 16, 1984.

Samuel R. Blaine, pro se.

George M. Beasley, III, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## ON DEFENDANT'S MOTION TO DISMISS

### OPINION

SETO, Judge:

This military pay case is before the court on defendant's motion to dismiss for lack of jurisdiction. Defendant asserts that plaintiff's claims for higher active duty pay and for promotion during the period 1943–1945, and for higher retired pay since 1945, are barred by the statute of limitations. Plaintiff, adversatively, contends that his claims involve questions of law only, and are therefore "continuing claims" not barred by the statute. Plaintiff has cross-moved for summary judgment on the merits of his claims.

For the reasons set forth below, we conclude that plaintiff's claims are indeed barred by the statute of limitations applicable to claims brought before this court. The claims are not within that class of claims which have been held to be "continuing claims" and, having been filed after the lapse of the six-year limit imposed on the filing of claims, are not within this court's jurisdiction. Accordingly, defendant's motion is granted, plaintiff's motion is denied, and plaintiff's complaint shall be dismissed.

### FACTS [1]

Plaintiff joined the Army in 1943 as an enlisted man. At that time, he had at least ten years of experience as a lawyer in private practice in New Jersey. Plaintiff,

1. For the purpose of its motion to dismiss, defendant has accepted plaintiff's statement of the pertinent facts.

acting upon the advice of the Washington, D.C., office of what was then the Army's Judge Advocate General Department ("JAGD"), intended to complete his basic training and then apply to Officer Candidate School ("OCS") to obtain an appointment as a JAGD officer. Upon completion of basic training, however, and before his application to OCS was processed, plaintiff was transferred to North Africa.

Shortly after plaintiff's transfer, the headquarters of the North Africa Theater of Operations—United States Army ("NATOUSA") issued NATOUSA Circular No. 73. This directive stated that applicants for OCS would not be returned to the United States for training, but rather:

> Applicants for Officer Candidate School and other enlisted men and Warrant Officers who are sufficiently outstanding in the opinion of the commanders concerned, to warrant commissions direct from the ranks, may be so recommended to this headquarters. Such recommendations will be signed by the Corps or higher commanders in person stating that the applicant has appeared before a board of officers and been duly recommended by the board; that the applicant meets the mental, moral and physical qualifications for appointment, and that he has exhibited outstanding qualities of leadership which warrant the appointment. [Para. 3, NATOUSA Cir. No. 73, May 1, 1943.]

Plaintiff immediately applied for an appointment pursuant to this order; appeared before and was recommended by a board of officers convened for the review of applications; and was granted a commission as a second lieutenant in the Army of the United States ("AUS").[2] Plaintiff was subsequently assigned to duty with the JAGD office in Tunisia. Plaintiff served in that office until late 1944 or early 1945 when he was injured in a traffic accident while on duty. Plaintiff was promoted to the rank of first lieutenant on April 14, 1945, and was retired in that rank on August 30, 1945, for disability incurred in the line of duty.

In 1978, plaintiff petitioned the Air Force Board for the Correction of Military Records ("AFBCMR" or "the Board") to correct his records to show that he was commissioned as a JAGD officer; to show that he was appointed in the rank of captain; and to evidence that he was promoted to and retired in the rank of major. Plaintiff contended that AR 605–10, under the authority of which he was commissioned in the AUS (*see* note 2, *supra*), incorporated by reference AR 140–32, effective May 26, 1942, which in turn mandated his appointment in the rank of captain. To support his "incorporation" argument, plaintiff relied on paragraphs 2, 9, 19, and 20 of AR 605–10. Specifically, paragraph 2 of the regulation provides in pertinent part "[t]hat any person appointed as an officer in the [AUS] under the provisions of this Act shall receive the same pay and allowances and be entitled to the same rights, privileges, and benefits as members of the Officers' Reserve Corps *of the same grade and length of active service....*" (Emphasis added.) Paragraph 9(a) stated: "Normally, applicants for initial appointment will be required to qualify as to military and nonmilitary education under the standards established for appointment to corresponding grade in the Officers' Reserve Corps (AR 140–22 to 140–39, inc.)...." Paragraphs 19 and 20 generally provided that an officer in the AUS of a given grade and length of service would be entitled to the same rights and privileges as those accorded any other officer of equal rank and length of service.

The Board found that, of these referenced paragraphs, only paragraph 9(a) incorporated any part of AR 140–32, and then only to the extent of the required

---

**2.** During the times here relevant, officer commissions in the AUS were granted under the authority of Army Regulation AR 605–10, December 30, 1942. Such commissions were temporary only, as indicated by paragraph 2 of that regulation, which stated in part: "[A]ny appointment made under the provisions of this Act may be vacated at any time by the President and, if not sooner vacated, shall continue *during the present emergency and six months thereafter* ...."

education and experience for appointment. The other paragraphs were found to refer to AR 140–32 for the purposes of comparison only, and not as a matter of incorporation. The Board concluded that plaintiff had shown neither a violation of the applicable regulations nor the existence of injustice, and denied plaintiff's application in an opinion dated March 29, 1983.

## DISCUSSION

■ Defendant predicates its motion to dismiss on 28 U.S.C. § 2501, which bars claims brought more than six years after they have accrued. As the brief in support of the motion points out, that statute is a strictly construed jurisdictional statute, *Gerber v. United States*, 2 Cl.Ct. 311 (1983) [YOCK, J.]; *Kirby v. United States*, 201 Ct.Cl. 527 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974), the provisions of which cannot be waived. *Parker v. United States*, 2 Cl.Ct. 399 (1983) [NETTESHEIM, J.]. It is therefore incumbent upon this court to resolve the jurisdictional issue before considering the merits of plaintiff's claims.

■ Plaintiff sets forth two arguments in opposition to defendant's assertion that his claims are barred by the statute of limitations. Plaintiff's first argument is that he "had no conscious choice" of filing his claim within six years after the accrual thereof. In support of this statement, he refers the court to his petition to the AFBCMR. Therein, plaintiff avers that recovering from his service-incurred disability and making a living as a lawyer permitted insufficient time to pursue his remedy. However sympathetic the court may be to plaintiff's past problems, it cannot, on that basis alone, excuse plaintiff's delay. The period of limitations cannot be waived. *Parker, supra*. Furthermore, plaintiff weakens his own argument by stating: "In browsing over these records [concerning his military career], I suddenly discovered for the first time that there was an apparent mistake in my military records ...." This discovery was made in 1975, thirty years after plaintiff's retirement

from service. Mere ignorance of a claim, however, does not excuse excessive delay. In *Willcox v. United States*, 3 Cl.Ct. 83, 85 (1983), Judge Wood stated:

A plaintiff's ignorance as to the existence of a claim of which he should be aware is, however, in itself far from enough to extend the statutory period; as a prerequisite to obtaining any such relief, "plaintiff must show either that defendant has concealed its acts with the result that plaintiff was unaware of the existence of a cause of action or that the nature of plaintiff's injury was such that it was inherently unknowable at the time the cause of action accrued." *Coastal Petroleum Co. v. United States*, 228 Ct.Cl. 864, [866] (1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982); *see also Norris v. United States*, 215 Ct.Cl. 961, 962, 566 F.2d 1191 (1977); *Japanese War Notes Claimants Ass'n. v. United States*, [178 Ct.Cl. 630, 373 F.2d 356, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967)]; *Braude v. United States*, [218 Ct.Cl. 270, 585 F.2d 1049 (1978)]. (Footnote omitted.)

There are, in the case at bar, neither allegations nor evidence that defendant concealed its acts: plaintiff was aware of his rank at all times. This is also not a case where plaintiff suffered an "unknowable" injury: the injury, if any, was discernible upon even a cursory review of plaintiff's military records, which records plaintiff admits were in his possession at all times. In the absence of a cognizable exception, the delay in seeking relief is unacceptable.

■ Plaintiff's second argument in opposition to the bar of the statute is that his claims are "continuing claims" not subject to the statute. Plaintiff cites *Gordon v. United States*, 134 Ct.Cl. 840 [140 F.Supp. 263] (1956), wherein the court stated:

However, when the claim is dependent only upon the law as written independent of any action by a board or agency, an action may be brought for any payments becoming due thereon within six years

before the petition is filed. [134 Ct.Cl. at 843, 140 F.Supp. at 265.]

The "continuing claim" doctrine was explicated by the Court of Claims in *Friedman, et al. v. United States,* 159 Ct.Cl. 1 (1963). In *Friedman,* which discussed at length the application of the statute of limitations to pay cases, "continuing claims" were defined as follows:

> The important characteristics of all these cases were: (a) Congress had not entrusted an administrative officer or tribunal with the *determination* of the claimant's eligibility for the particular pay he sought; (b) the cases turned on pure issues of law or on specific issues of fact which the court was to decide for itself (*i.e.,* Congress had not established any administrative tribunal to *decide* either the factual or the legal questions); and (c) in general the cases called upon the court to resolve sharp and narrow factual issues not demanding judical [sic] evaluation of broad concepts such as "disability" (concepts which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion.) [159 Ct.Cl. at 7 (Emphasis in original; footnote omitted.)]

In applying this doctrine, as established and explained by the Court of Claims, to the case at bar, it is immediately apparent that, even if plaintiff's claims to active duty pay *are* continuing claims, they are not "saved" by the doctrine. Plaintiff's right to active duty pay ended at least upon his retirement from service. In order to file within the limitations period to recover the higher pay allegedly due him, he would have had to bring suit before the end of 1951. In this respect, plaintiff is at least thirty-two years too late, and that part of his complaint requesting active duty pay must be dismissed.

 Different considerations are present in regard to plaintiff's claim for higher retired pay. If that claim is indeed a "continuing claim" as defined in *Friedman,* plaintiff may be able to state a claim for that amount coming due within six years before the filing of his complaint in this court. To be a "continuing" claim, a claim must satisfy all three of the conditions set forth in the *Friedman* decision. We need address only the last of these. This last condition requires that the case be one in which a court need only "resolve sharp and narrow factual issues *not demanding judical [sic] evaluation of broad concepts . . . which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion."* *Friedman,* 159 Ct.Cl. at 7 (emphasis added). Plaintiff's proper rank upon retirement, however, *does* demand the "weighing of numerous factors . . . as well as the exercise of . . . discretion." This point was succinctly made in *Cooper v. United States,* 203 Ct.Cl. 300, 303 (1974):

> The Army's original appointment of plaintiff in the grade of captain was a *purely discretionary act* entrusted by law to the Secretary of the Army and *is not reviewable judicially, Orloff v. Willoughby,* 345 U.S. 83, 90 [73 S.Ct. 534, 538, 97 L.Ed. 842] (1953), *Donnelly v. United States,* 133 Ct.Cl. 120, 122, 134 F.Supp. 635, 636 (1955), nor does this court have any authority to promote a military officer *for that is also a discretionary function* of the Executive. *Muldonian v. United States,* 193 Ct.Cl. 99, 432 F.2d 443 (1970). [Emphasis added.]

*See also Abruzzo v. United States,* 206 Ct.Cl. 731, 513 F.2d 608 (1975); *Cherry v. United States,* 225 Ct.Cl. 312, 640 F.2d 1184 (1980). Because resolution of plaintiff's claim involves consideration of a "purely discretionary act," the nature of the claim does not satisfy the requirements for establishing a continuing claim. As was concluded in *Cooper:* "[Plaintiff] could have attacked that [appointment/promotion] decision within 6 years after it was made. 28 U.S.C. § 2501. He did not do this. It is too late now." *Cooper, supra* at 306.

In the face of this clear language, plaintiff urges upon this court the same arguments he presented to the AFBCMR, *i.e.,* that his appointment was *not* discretionary,

but rather was mandated in the rank of captain because of AR 140–32, as incorporated by AR 605–10. On this point, however, the court agrees with the Board. There is nothing in AR 605–10 which expressly incorporates paragraph 2 (mandating appointment in the JAGD at the rank of captain in the Officers' Reserve Corps) of AR 140–32. AR 605–10 does refer to AR 140–32 in setting educational and experiential requirements, but nowhere does the former state that meeting those requirements entitles one to a given rank. To the contrary, AR 605–10, ¶ 8, states that "Appointments may be made in *any grade* for which the appointee is qualified and eligible ...." (Emphasis added.) Assuming, *arguendo*, that plaintiff was qualified for the grade of captain, he also would be qualified, *a priori*, for any grade less than that of captain and, under the regulation, the appointing authority had absolute discretion in appointing plaintiff. This reasoning accords with the decision in *Cooper:* plaintiff's appointment and promotion were both discretionary acts and, as such, are not reviewable. The ineluctable conclusion is that plaintiff's claim is *not* a continuing one and is therefore barred by the lapse of the limitation period.[3]

■ As a final matter, it should be noted that plaintiff's application to the AFBCMR does not toll the running of the statute limitation, nor does it create any new claim of which this court has jurisdiction. It is firmly established that such an appeal is a permissive remedy and, as such, does not affect the force of the time bar. *See, e.g., Ramsey v. United States,* 215 Ct.Cl. 1042, 578 F.2d 1388 (1978), *cert. denied,* 439 U.S. 1068, 99 S.Ct. 836, 59 L.Ed.2d 33 (1979); *Jones v. United States,* 225 Ct.Cl. 643, 644 (1980); *DeBow v. United States,* 193 Ct.Cl. 499, 503, 434 F.2d 1333 (1970), *cert. denied,*

404 U.S. 846, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971).

## CONCLUSION

This court's statute of limitations, 28 U.S.C. § 2501, bars the bringing of any claim more than six years after the accrual of the cause of action. Plaintiff's claims herein accrued at least thirty-seven years before the filing of the complaint. Those claims cognizable by this court are based on discretionary acts and, therefore, are not "continuing claims" for which some relief might possibly be granted. Because the requirement of filing within the limitations period has not been met, this court necessarily concludes that it has no jurisdiction of plaintiff's complaint. Therefore, defendant's motion to dismiss is GRANTED, and plaintiff's complaint is to be DISMISSED WITH PREJUDICE.[4]

IT IS SO ORDERED.

---

3. Plaintiff also argues that this court should follow the AFBCMR's lead in setting aside the statute of limitations. This plea is of no avail. The Board has statutory authority to waive its three-year limitation period. 10 U.S.C. § 1552(b). As noted above, this court has no such discretion. *See Kirby, supra; Parker, supra.*

4. Consequently, plaintiff's motion for summary judgment is DENIED AS MOOT and defendant's motion to suspend proceedings on plaintiff's motion pending resolution of the motion to dismiss is also DENIED AS MOOT.