Plaintiff in this pro se military pay case seeks an award of back pay and compensatory damages stemming from an improper bad conduct discharge from the Army. The case comes before us, without oral argument, on cross-motions *856 for summary judgment. Claimant enlisted in the United States Army as a private on December 18, 1967. On March 4, 1969, he was convicted by general court-martial of an aggravated assault and was sentenced to be dishonorably discharged, to be confined at hard labor for one year, to forfeit all pay and allowances, and to be reduced to the grade of private E-l. The convening authority reduced the sentence and suspended it for six months (except the reduction in grade). If the suspended sentence were not vacated within the six month period, it was to be remitted automatically as of November 1969. In January 1970, the Army Court of Military Review affirmed the conviction and the reduced sentence. On the same day, the suspension of the bad conduct discharge was vacated. As a result, the plaintiff was separated from the Army with a bad conduct discharge as of January 27, 1970 — prior to the end of his enlistment period (which would have been December 17, 1970).
In November 1978 and January 1979, the plaintiff applied for administrative review and upgrading of his bad conduct discharge. On May 21, 1980, the Army Board for the Correction of Military Records determined that the punitive, less-than-honorable discharge was in error and unauthorized because the period of suspension had run before the discharge was vacated, and therefore the suspended discharge had already been automatically remitted.[1] The plaintiffs January 27,1970 discharge was upgraded to honorable, but the date of discharge was not changed. The Correction Board referred the case to the Army Finance and Accounting Center to determine whether plaintiff was entitled to any monetary benefits that may have been due him as a result of the correction. His claim for back pay was rejected in November 1980, and his claim for benefits (which is not in issue here) was referred to the Veterans Administration. Prior to receiving that denial, plaintiff filed his petition here on September 18,1980.
The court’s six-year statute of limitations bars suit. See 28 U.S.C. §2501 (1976). The six years begin to run when the cause of action accrues, and for a military discharge the *857 claim accrues, all at once, as of the date the plaintiff was discharged, and not at the end of an enlistment or after optional administrative procedures have ended. E.g. Mathis v. United States, 183 Ct. Cl. 145, 147-148, 391 F.2d 938, 938-40, rehearing granted, 183 Ct. Cl. 150, 394 F.2d 519 (1968), aff’d on rehearing, 190 Ct. Cl. 925, 421 F.2d 703 (1970). The plaintiff suggests, however, that limitations began to run only once the Correction Board acted, in May 1980, because the Board gave him some relief but did not (according to him) give him the full relief required. In DeBow v. United States, 193 Ct. Cl. 499, 503, 434 F.2d 1333, 1335 (1970), cert. denied, 404 U.S. 846 (1971), the court said that "a claimant can often found a new cause of action, or a 'continuing’ claim, upon a favorable determination by the Correction Board (or comparable military tribunal) where that determination stops short of giving the full relief it was compelled in law to grant on the presentation then made.” The rationale is that, once an administrative board decides that relief is proper, it cannot arbitrarily decide to give "half-a-legal-loaf.” DeBow, supra, 193 Ct. Cl. 499, 504, 434 F.2d 1333, 1335; Denton v. United States, 204 Ct. Cl. 188, 195 (1974), cert. denied, 421 U.S. 963 (1975); Eurell v. United States, 215 Ct. Cl. 273, 278-79, 566 F.2d 1146, 1149 (1977). Plaintiffs claim is that he is entitled to back pay under the half-a-loaf theory because the honorable discharge could not be "back-dated” to January 1970. However, the half-a-loaf doctrine does not help this plaintiff. It applies only where the relief sought should have followed as a matter of law from the partial relief granted by the Correction Board, and when the claimant was required to seek administrative relief before coming to the court. Neither factor exists here.
It should be noted, first, that plaintiff did not specifically ask the Correction Board for monetary relief or the updating of his corrected discharge, which omission could exclude his claim from the half-a-loaf principle. See, e.g. Denton, supra, 204 Ct. Cl. 188, 196-97. But even if we hold that such a request was implicit in his petition to the Board (the plaintiff acted pro se then as he does now) and was recognized by the Board when it referred him to the financial officers, the Board was not remiss in creating a valid honorable discharge as of the date of the original, *858 invalid one. At all times, the right of an enlisted soldier to continue his enlistment until its term ends is limited by the right of the Secretary of the Army to grant, at his discretion, an honorable or a general discharge for the convenience of the Government. AR 635-200, ch. 5-3 (1969). Thus, the Secretary could have given the plaintiff an honorable discharge in January 1970, and it would certainly not be arbitrary or an abuse of discretion to take that course for a soldier convicted of the serious offense of aggravated assault. By upgrading the January 27, 1970 discharge in May 1980, the Correction Board, acting for the Secretary, see 10 U.S.C. § 1552(a) (1976), did just that, converting the erroneous bad conduct discharge into a valid honorable discharge as of January 27, 1970. Though the Board did not spell out that this is what it was doing, its action upgrading the discharge, but leaving its date untouched, is fully consistent with that position, and we infer that that is what it did. The Correction Board thus gave plaintiff all the relief to which he was legally entitled from the Board.[2]
There is also another reason why plaintiff cannot avail himself of the half-a-loaf doctrine. That principle has generally been applied only in cases in which it was mandatory to seek administrative relief before coming to court. See, e.g., Hankins v. United States, 183 Ct. Cl. 32, 34 (1968), and decisions cited at 34, n.l. Resort to the Correction Board for the upgrading of a discharge is, however, permissive, not mandatory. E.g. Mathis v. United States, supra, 183 Ct. Cl. 145, 148, 391 F.2d 938, 939. Where the claimant could, as here, have brought his monetary claim directly to this court at the outset, we have held that the failure of the Correction Board to give full monetary relief would not create a new cause of action, nor does it defer or prolong the statute of limitations that Congress has established for this court. Haislip v. United States, 152 Ct. Cl. 339, 343, 296 F.2d 469, 471 (1961); Oleson v. United States, 172 Ct. Cl. 9, 19 (1965). Mr. Rumph could have brought *859 timely suit here immediately upon his discharge, but failed to do so.
It is therefore ordered that the defendant’s motion for summary judgment is granted, plaintiffs motion is denied, and the petition is dismissed.[3]

 There was no other lawful ground, at that time, to issue plaintiff a bad conduct discharge which, in the Army, can be awarded only by a court-martial.

 The Correction Board could not, of course, have given him damages or compensation for any injurious effects of the erroneous bad conduct discharge while it existed.

 The plaintiff has asked the court for a hearing en banc. This suggestion has been considered by the available active judges, but is denied.